BECKER, Chief Judge,*
Dissenting.
I join in Part II.A of the majority opinion (Municipal Liability), as well as Parts II.B.2 and 3 (use of “unreasonable force” in jury charge and lack of a special interrogatory on seizure). I disagree with, hence I do not join in Part II.B.1 (Particular Emphasis on Jury Charge); I therefore write separately on that issue. Because I would reverse and remand for a new trial on account of what I view as a deficiency of the jury charge, I do not reach Part II.C (New Trial Motion).
I.
As in most cases of this genre, the facts are critical. Especially important are the following: (1) that Officers Hood and Swinton were in plain-clothes; (2) that under Philadelphia Police Regulations, officers in plain-clothes may not make traffic stops, hence Hood and Swinton violated this policy in stopping Campbell’s car; (3) that the officers also violated Philadelphia Police regulations by pulling perpendicularly in front of Campbell’s car to stop it;[1] (4) that Campbell believed that he was being carjacked; and (5) that the shot that maimed Campbell, the fourth shot fired by the officers, was arguably not discharged until after Campbell’s vehicle was heading away from the officers at which time he could not have posed a danger to them. The majority opinion notes these facts but does not acknowledge that: (6) under these circumstances, it was reasonable for Campbell, who denies that the slovenly-dressed officers showed identification, thought that he might be facing a carjacking, which in turn furnished the motivation to escape; and (7) under these circumstances, the perceived need to use force was arguably created by the misconduct of the officers themselves.
II.
In my view, these facts and permissible inferences posed an important legal issue with which the District Court should have but did not come to grips, resolution of which should have resulted in a charge much more favorable to the plaintiffs. In Abraham v. Raso, 183 F.3d 279 (3d Cir.1999), we established, as a general matter, the relevance of officers’ pre-seizure conduct to determining whether use of force during the seizure is excessive. Raso left open, however, the question of how much weight an officer’s unreasonable creation of danger should be given in the calculus of whether the officer’s use of force was ultimately reasonable under the Fourth amendment.
Without laying down a blanket ■ rule (which perforce I obviously cannot do as a dissenting judge) I would decide that issue by holding that if the officer’s conduct unreasonably creates the need to use deadly force in self-defense, that conduct may render the eventual use of deadly force by the officer unreasonable in violation of the Fourth Amendment, even if the officer *130 reasonably believed that such force was necessary to prevent death or severe bodily injury. See Estate of Starks v. Enyart, 5 F.3d 230, 234 (7th Cir.1993) (“Police officers who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized for the use of deadly force.”); cf. Gilmere v. City of Atlanta, 774 F.2d 1495, 1501 (11th Cir.1985) (“[A] moment of legitimate fear should not preclude liability for a harm which largely resulted from [an officer’s] own improper use of his official power.”).
III.
The art of instructing the jury is not the rote recitation of controlling legal principles, quoted verbatim from the case law, but the didactic exercise of providing the jury with guidance as to how those principles apply to the evidence presented and how the factual disputes bear on the ultimate outcome. Cf. Ayoub v. Spencer, 550 F.2d 164, 167 (3d Cir.1977) (“While a comprehensive review of the evidence is not generally required, the District Court’s failure, here to relate the parties’ contentions to the law ... left the jury without guide or compass to aid it in rationally reaching a decision.”). In my view, the District Court’s “vanilla” charge - “you may consider all the factors (argued by counsel)” - was not adequate because it lacked guidance on the issue just described in Part II of this (dissenting) opinion.
A.
First, I believe that it was an abuse of discretion for the trial judge not to explain to the jury at least the general principle that conduct on the officers’ part that unreasonably precipitated the need to use deadly force may provide a basis for holding that the eventual use of deadly force was unreasonable in violation of the Fourth Amendment. The closest the District Court came to instructing the jury on this point was when it directed the jury to consider “the totality of the circumstances” and “[a]ll of the events transpiring during the officers’ encounter.”
The instructions preceding and following these particular instructions, however, focused on whether a reasonable officer in Hood’s position would have believed that he was in danger of death or severe bodily injury when he fired the shots:
In evaluating the reasonableness of the use of force in this situation, you must ask yourselves the following question: giving due regard to the pressures faced by the police, was it objectionably [sic] reasonable for the officer to believe, in light of the totality of the circumstances, that the subject posed a significant threat of death or serious physical injury to the officer or others, and that deadly force was necessary to prevent the suspect from causing serious physical injury or death.
The determination of reasonableness must embody allowance for the fact that police officers are forced to make split-second judgments - in circumstances that are tense, uncertain and rapidly evolving - about the amount of force that is necessary in a particular situation. All of the events transpiring during the officers’ encounter with the plaintiffs can be considered in evaluating the reasonableness of the shooting.
A. 124-26.
This charge clearly favored the defendants. In this context, the jury was likely to have understood the “totality of the circumstances” and “[a]ll of the events transpiring during the officers’ encounter” to refer to the circumstances that would lead a reasonable officer in Hood’s position *131 to believe that he was in danger of death or severe bodily injury at the time he fired, and not to conduct on the officers’ part that unnecessarily precipitated the need to use deadly force.
As I would decide the question reserved in Raso, an officer’s use of deadly force may violate the Fourth Amendment even if the officer reasonably believed that the use of deadly force was necessary to prevent death or severe bodily injury. What the District Court told the jury was that an officer “is justified in the úse of any force which is believed to be necessary to effect the stop and of any force which he or she reasonably believes to be necessary to defend himself or another from serious bodily injury.” A.126. This instruction, in my view, improperly prevented the jury from finding for the plaintiffs if the jury concluded that a reasonable officer in Hood’s position would have believed he was in danger of being run over at the time he fired the shots but that the officers had unreasonably placed themselves in a position in which the use of deadly force would be necessary. Inasmuch as I believe that the District Court’s failure to charge in accordance with the principles outlined was legal error (which itself is an abuse of discretion), I find grounds to set aside the judgment.
B.
Second, I think that the jury needed guidance on the “signature” fact's of the case: that the defendants were plainclothes officers, forbidden by Regulations to make traffic stops, and that the officers were driving an unmarked car (in a high crime neighborhood) which they pulled perpendicularly in front of plaintiffs’ car to make a traffic stop, also in violation of department policy. I believe the jury should have been told explicitly that it could consider such matters in determining the reasonableness of the officers’ conduct.
I also think that the court should have explained to the jury the relevance of the disputed questions of fact, such as whether the officers exited the car with guns drawn and failed to identify themselves, as Campbell testified, and whether a reasonable officer in -Hood’s position would know that he was out of danger when he fired the last shot, which entered the back of Campbell’s car and lodged in the base of his brain. Plaintiffs’ accident expert, who analyzed each of the four shots fired by Hood and the position of the car at the time of the shots, testified that if Hood fired the shots in one second, which the expert thought was likely, the final shot, which went into the car’s back windshield, would have been fired when the car was 32 feet up the road from Hood. A.394. If, as Hood testified, he fired the shots in two seconds, the final shot would have been fired, according to plaintiffs’ expert, when the car was 120 feet from Hood. A.394. This testimony was unrebutted by any defense expert.
C.
Notwithstanding the foregoing discussion, I do not maintain that the District Court;has an obligation to review all the evidence with the jury and to explain to it the significance of all major evidence in the case. Concomitantly, I acknowledge the key role of counsel in arguing the facts to the jury and explaining their significance. But there are some cases in which the failure to explain the significance of key facts does constitute a breach of the trial judge’s duty; in my view this is one of them. A trial judge who simply tells the jury to consider the totality of the circumstances and leaves it to the lawyers to point out the particular circumstances favorable to their clients, in my view, fails to *132 “adequately submit[ ] the issues in the case to the jury.” In re Merritt Logan, Inc., 901 F.2d 349, 359 (3d Cir.1990).
I add that I do not believe that to explain the significance of the facts that I have stressed, against the background of the applicable law (which under my view of the case the District Court did not cover) would constitute “slanting.” The facts are the facts, and they can be set forth in a balanced way. The jury could also have been instructed on the relevance of the evidence supporting the defendants’ case. The mere fact that some facts favor one side or another is no reason not to explain their significance. The judge’s job is to give guidance to a lay jury, not to leave it adrift.
IV.
I have no idea what a properly charged jury would do in this case. The jury may believe that the officers, genuinely fearing for their lives, acted reasonably. But it may also believe that Campbell, who had just come from dropping his grandmother off at church, with his minor cousin Tierra Grazier being the passenger in the rear seat, would prevail. At all events, I think that the failure of the District Court to give the jury adequate guidance oh either the law or the facts constitutes an abuse of discretion. I would therefore set aside the judgment and grant the plaintiffs a new trial. I respectfully dissent.

. The Police Department's Internal Affairs Division found that Hood violated Police Department Directive 10, regarding use of deadly force, and Directive 92, which instructs officers in plain-clothes not to make stops for traffic violations.